**OFFICE OF COMMUNICATION OF the UNITED CHURCH OF CHRIST,**
Petitioner,

v.

**FEDERAL COMMUNICATIONS COM-MISSION and United States of America, Respondents.**

No. 24672.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 2, 1971.

Decided March 28, 1972.

Mr. Albert H. Kramer, Washington, D. C., for petitioner.

Mr. Joseph A. Marino, Counsel, Federal Communications Comm., with whom Messrs. Richard E. Wiley, Gen. Counsel at the time the brief was filed, and John H. Conlin, Associate Gen. Counsel at the time the brief was filed, were on the brief, for appellee Federal Communications Comm.

Mr. Robert B. Nicholson, Atty., Dept. of Justice, for appellee United States. Mr. Howard E. Shapiro, Atty., Dept. of Justice, also entered an appearance for appellee United States.

Mr. Charles R. Halpern, Washington, D. C., with whom Mr. Geoffrey Cowan, Washington, D. C., was on the brief, for Friends of the Earth as amicus curiae urging reversal.

Before BAZELON, Chief Judge, DANAHER, Senior Circuit Judge, and ROBINSON, Circuit Judge.

BAZELON, Chief Judge:

In this appeal we are asked to review the Federal Communications Commission's refusal to permit the voluntary reimbursement of expenses to the appellant, the Office of Communication of the United Church of Christ, by a broadcast licensee. The proposed reimbursement was for legal advice and other services rendered by the Church to several civic associations in Texarkana, Texas in filing a petition to deny the license of KTAL–TV in Texarkana, negotiating a settlement with the licensee of KTAL, and subsequently withdrawing the petition to deny.

We specifically overrule the Commission's principle of general application that in no petition to deny situation is it in the public interest to permit reimbursement, and remand this case to the Commission for a determination of whether reimbursement should be allowed in accordance with this opinion.

## I.

### The Facts

In August of 1968, KCMC, Inc., the licensee of KTAL–TV in Texarkana, applied to the Commission for renewal of its license. On January 10, 1969, twelve civic associations in the Texarkana area filed a petition to deny renewal of the KTAL license on the grounds that KTAL had ignored Negroes, who constituted a substantial portion of the listening public in Texarkana, in the development and presentation of its programs. The appellant Church, whose work in providing technical and legal assistance to community groups is well known to this court,[1] had at the request of several Texarkana groups provided assistance in the preparation of the petition to deny, and in responding to the licensee's opposition to the petition.

While the petition was pending, the Texarkana organizations together with the Church held a series of discussions with the licensee in an attempt to re-

---

1. Office of Communication of United Church of Christ v. F.C.C., 123 U.S. App.D.C. 328, 359 F.2d 994 (1966);

Office of Communication of United Church of Christ v. F.C.C., 138 U.S.App. D.C. 112, 425 F.2d 543 (1969).

solve their dispute. An agreement was reached wherein the licensee undertook to assure that it would meet the programming needs of minorities, would improve the balance, scope and tone of its programs dealing with minorities, and would consult with local groups to achieve these goals. This agreement, dated June 8, 1969, was filed as an amendment to the renewal application with the Commission.[2]

The Texarkana organizations subsequently requested the Commission to give no further consideration to their petition to deny, and requested that it renew the license of KTAL in consideration of the specific undertakings of the licensee.

On July 29, 1969, the Commission renewed the license of KTAL in reliance on the agreement reached between the Texarkana groups and the licensee.[3] After recounting the circumstances behind the petition to deny and the negotiations ending in agreement, the Commission stated:

"We believe that this Commission should encourage licensees to meet with community oriented groups to settle complaints of local broadcast service. Such cooperation at the community level should prove to be more effective in improving local service than would be the imposition of strict guidelines by the Commission." [4]

Shortly after the Commission's decision, Earle K. Moore, counsel for the appellant Church, submitted a request to the Commission for approval of KCMC, Inc.'s agreement to reimburse the Church for its expenses incurred on behalf of the Texarkana organizations—a total of $15,137.11. The Church's request for reimbursement from KCMC, Inc. had been approved by the public groups in Texarkana, and was a term of the negotiations with KCMC, Inc. However, the Church had specifically indicated that reimbursement was not a condition precedent to any agreement on the substantive issues. When the settlement was reached, counsel for KCMC, Inc. stated that his client would reimburse the Church provided that the Commission approved the settlement agreement first, and later approved the reimbursement.[5]

---

2. The amendment and the licensee's Statement of Policy are at pages 12–14 of the Joint Appendix.

3. The Commission stated: "In view of the resolution of the matters filed against KTAL–TV and the measures adopted to improve the television service to Texarkana, the Commission has granted your application for renewal . . . as serving the public interest, convenience, and necessity." KCMC, Inc., 19 F.C.C.2d 109, 110 (1969).

4. *Id.* at 109. Commissioner Nicholas Johnson filed a separate statement further discussing the reasons for the Commission's decision:
   "A license renewal proceeding is, in my judgment, a matter between the broadcaster-licensee and all the people in the community, a matter to be resolved by the FCC according to the statutory standard of the "public interest." The Commission can utilize the services of volunteer local groups. Indeed, it is so woefully understaffed that any thorough review of broadcaster performance simply must depend upon an aroused and involved citizenry.
   But just as licenses should not wrongfully be withheld, revoked or denied in response to unwarranted citizen protest, so they should not be granted automatically because a certain group of once protesting citizens has for some reason withdrawn its objections.
   \* \* \* \* \*
   . . . [A]s the settlement procedure has been widely used throughout the legal process, so I believe we should experiment with its use in the administrative license renewal process of this agency. If local groups can be satisfied with the terms of agreements they can work out with local broadcasters I believe they are entitled to great—although perhaps not conclusive—weight."
   *Id.* at 111–112.

5. These facts were communicated to the Commission by Mr. Moore and were substantially verified in a letter from counsel for the licensee. *See* Joint Appendix, pp. 22–25.

The settlement agreement was therefore submitted to the Commission with no mention of reimbursement. Mr. Moore's subsequent request in October of 1969 for the Commission's approval of reimbursement was in full accord with the understanding between the parties.

Almost a year later, in September of 1970, the Commission issued its decision denying approval of the reimbursement agreement.[6] Briefly, a majority of four considered that the issue raised was whether the public interest is served by permitting payment of expenses to those who file petitions to deny under 47 U.S.C. § 309 [7], and subsequently seek to withdraw them after settlement. The majority recognized that the Communications Act was designed to facilitate filing of petitions to deny, and that "the settlement of the issues between the station and the petitioner listener group is generally a desirable goal." [8] However, the majority was of the opinion that reimbursement of expenses was not "necessary" to effectuate either goal, and that the potential for abuse if reimbursement were allowed outweighed any benefit to the public interest. In discussing abuses, the majority mentioned two possibilities:

> "First . . . overpayments (e. g. inflated fees) or even opportunists motivated to file insubstantial petitions in order to obtain substantial fees. . . .

Second . . . the possibility that settlement of the merits of the dispute might be influenced by the ability to obtain reimbursement of expenses from the licensee." [9]

In light of these dangers, the majority determined that it was in the public interest to formulate a principle of general application—"namely, that in no petition to deny situation, whatever the nature of the petitioner, will we permit payment of expenses or other financial benefit to the petitioner." [10]

Chairman Burch and Commissioner Johnson joined in dissent to state that the Commission had previously allowed reimbursement where it facilitated public interest goals, and there was no reason to forbid it when the settlement and withdrawal of "petition to deny" litigation served the public interest. To prevent abuse, the Commissioners formulated rules to be enforced by the Commission.[11]

Commissioner Cox wrote separately in dissent that permitting reimbursement in this case served still another public interest goal—namely, facilitating the participation of public interest groups in the license renewal process.[12]

It is necessary to focus on these dissents since the Commission's initial objection to the Church's appeal is that the issues raised in this court were never presented to the Commission.

6. KCMC, Inc., 25 F.C.C.2d 603 (1970).

7. The statute reads in pertinent part:
   "(d) (1) Any party in interest may file with the Commission a petition to deny any application (whether as originally filed or as amended) to which subsection (b) of this section applies. . . . the petition shall contain specific allegations of fact sufficient to show that the petitioner is a party in interest and that a grant of the application would be prima facie inconsistent with (the public interest, convenience, and necessity)."

8. 25 F.C.C.2d at 604.

9. *Ibid.*

10. *Id.* at 605.

11. *Id.* at 605–606. The Commissioners proposed the following rules:
    "(1) That the petition to deny was filed in good faith by a responsible organization;
    (2) That the petition raised substantial issues;
    (3) That the settlement also entailed solid, substantial results;
    (4) That there was a detailed showing that the expenses claimed were legitimately and prudently made."

12. *Id.* at 609–610.

## II.

### Exhaustion of Administrative Remedy

Appellant Church challenges the decision of the Commission primarily on the grounds that: (1) The Commission is required by statute to facilitate citizen participation in the renewal process, and denial of reimbursement to the Church is in direct violation of this mandate; (2) the Commission's decision unjustly discriminates against the Church since it has allowed reimbursement in other situations; and (3) the Commission's decision is unreasoned and lacks factual support in the record.[13]

Section 405 of the Communications Act provides that:

> "The filing of a petition for rehearing shall not be a condition precedent to judicial review of any . . . order, decision, report, or action, except where the party seeking such review . . . (2) relies on questions of fact or law *upon which the Commission . . . has been afforded no opportunity to pass.*" (Emphasis added.)

The Commission contends that the Church raised none of these arguments before it, and did not file a petition for rehearing. Therefore, § 405 would preclude judicial review.

It is true that the Commission decided this case only on the basis of letters from counsel outlining the facts behind the request for reimbursement, and affidavits enumerating the Church's expenses. However, the majority's decision analyzed and interpreted the Communications Act and Commission precedent as mandating a general rule that reimbursement in petition to deny situations would not serve the public interest. The Church argues to us the opposite result—that the statute and precedents mandate reimbursement in this case. This was an alternative interpretation of the authorities which was surely before the Commissioners at the time of their decision.

Indeed, the dissenting Commissioners Burch and Johnson raise the very argument pressed here by the Church.[14] It would be blindly ignoring the realities of administrative decision-making to say that the majority had no opportunity to consider the objections raised by the dissenters, and to make its ruling in light of these objections.[15]

On its face, § 405, commands only that the Commission be afforded the opportunity to pass on issues.[16] There is no requirement that this opportunity be afforded in any particular manner, or by any particular party. Thus to allow the Church to seek review

---

13. The United States of America, a statutory respondent in this appeal, also seeks reversal of the Commission's decision for similar reasons.

14. These dissenters contend that the majority's rule is contrary to a series of Commission rulings which approve reimbursement when it facilitates termination of litigation in the public interest. This is the issue which we review in Part IV of our opinion. Commissioner Cox makes the additional argument that reimbursing public interest groups in this situation is an independent public interest goal. This we deal with in Part V of this opinion.

15. See Braniff Airways, Inc. v. C.A.B., 126 U.S.App.D.C. 399, 406, 379 F.2d 453, 460 (1967) where this court stated: "A strong presumption of regularity supports the inference that when administrative officials purport to decide

weighty issues within their domain they have conscientiously considered the issues and adverted to the views of their colleagues."

16. Compare the language of the analogous section in the National Labor Relations Act, 29 U.S.C. § 160(e): "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." This Act, which specifically requires that objections be filed, 29 U.S.C. § 160(d), has been strictly construed. Glaziers' Local No. 558 v. N.L.R.B., 132 U.S.App. D.C. 394, 408 F.2d 197 (1969); Retail Clerks' International Ass'n v. N.L.R.B., 125 U.S.App.D.C. 63, 366 F.2d 642 (1966).

of issues raised by the majority and challenged by the dissenters complies with both § 405's requirements and its objectives.[17]

In light of the record before us, the Commission's argument seems hollow indeed and we turn to the issues raised by the appellant.

## III.

### Standard of Review

■ The issue posed by the Church is whether the Commission's interpretation of the public interest standard was correct. Since there is no explicit statutory provision which controls the Church's request for reimbursement,[18] we find guidance for our standard of review of the Commission's decision from the Supreme Court: The Commission's construction of its own statutory mandate "should be followed unless there are compelling indications that it is wrong." Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L. Ed.2d 371 (1969).[19]

■ It is the necessary and proper task of this court to undertake a careful and deliberate scrutiny of an agency's decisions to insure compliance with law and the legislative mandate.[20]

We agree with appellant that the public interest standard cannot mean that the Commission may totally prohibit reimbursement in all petition to deny situations. This rule cannot be sustained in light of the policies expressed in the Communications Act and the Commission's own interpretations of its statutory mandate.

## IV.

### Allowing Reimbursement to Facilitate Settlement of Litigation

Appellant contends that the Commission must, in accordance with its statutory mandate to act in the public interest, permit voluntary reimbursement of parties seeking to settle and to withdraw litigation from the Commission if (1) the underlying agreement to withdraw is in the public interest and (2) the reimbursement sought is legitimate and prudent. We find compelling support for this contention in the Communications Act and in the Commission's own decisions. A rule which flatly prohibits reimbursement in all peti-

---

17. We strongly adhere to the policy behind this statute that a reviewing court not usurp the agency's function, Unemployment Compensation Comm'n of Alaska v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946). However, when it would be only an exercise in futility to require a party to ask the Commission to reconsider issues already raised in dissent, the purposes of the statute have been fulfilled. *Cf.* Joseph v. F.C.C., 131 U.S.App.D.C. 207, 210, 404 F.2d 207, 210 (1968); Wilson & Co. v. United States, 335 F.2d 788, 794 (7th Cir. 1964); Hennesey v. S.E.C., 285 F.2d 511, 515 (3rd Cir. 1961); Gerico Investment Co. v. F.C.C., 99 U.S.App.D.C. 379, 380, 240 F.2d 410, 411 (1957).

18. 25 F.C.C.2d at 603. Sections 303, 307 (a) and 309(a) of the Communications Act, among others, establish the general mandate that the Commission act in accordance with "public convenience, interest or necessity."

19. We take this principle to mean that an appellate court should not substitute its own judgment of what is in the public interest without substantial guidance from extrinsic sources that the Commission's judgment is incorrect. Business Executives' Move for Vietnam Peace v. F.C.C., 146 U.S.App.D.C. 181, 188, 450 F.2d 642, 649 (1971). *See also* Udall v. Tallman, 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Columbia Broadcasting System, Inc. v. F.C.C., 147 U.S.App.D.C. 175, 454 F.2d 1018 (1971); Greater Boston Television Corp. v. F.C.C., 143 U.S.App.D.C. 383, 392–395, 444 F.2d 841, 850–853 (1970); 1 K. Davis, Administrative Law Treatise § 5.03 (1958).

20. *See* Greater Boston Television Corp v. F.C.C., *supra* note 19, 143 U.S.App. D.C. at 393, 444 F.2d at 851. The broad statutory requirements must "mean something and there must be a great range of actions which they foreclose to the Commission." Business Executives' Move for Vietnam Peace, *supra* note 19, 146 U.S.App.D.C. at 188, 450 F.2d at 649.

tion to deny situations [21] plainly violates this principle.

For primary guidance, we of course turn to the Communications Act of 1934. In § 311(c) [22] Congress provides for Commission approval of reimbursement agreements when one or several competing applicants for new broadcasting facilities withdraws to permit the speedy initiation of service to the public by one broadcaster.

This is a statutory policy which has applicability to the case before us—reimbursement which facilitates withdrawal of competing or conflicting petitions is definitely in the public interest when termination of the litigation serves an overriding public interest goal.[23] Even prior to the enactment of § 311(c) the Commission had occasionally allowed reimbursement of out-of-pocket expenses to a withdrawing party. Premier Television, Inc. 9 Pike & Fischer R.R. 397, 399 (1953).

The potential for abuse of reimbursement agreements through buy-outs of superior competitors or pay-offs to those filing frivolous applications was clearly recognized by this court.[24] Congress sought to deal with these abuses through § 311(c) which required strict scrutiny by the Commission on a case-by-case basis of the bona fides of the parties and the legitimacy of the reimbursement. Congress did not mandate an absolute bar against reimbursement.

Since the enactment of § 311(c), the Commission has been asked to approve withdrawal and reimbursement agreements in situations to which the statute does not explicitly apply. In the leading case, *National Broadcasting Co., Inc.*,[25] the Commission reasoned that Congress must have "overlooked" the possibility that the Commission would have to deal with pay-offs in a variety of situations. The Commission formulated the principle that "the spirit, but not the terms, of Section 311(c) is applicable."[26]

---

21. And which seemingly makes no provision for waiver in special circumstances, since the Church's request, and the Commission's own decision in *KCMC, Inc.*, *supra*, 19 F.C.C.2d at 109, state that settlement and withdrawal in this very case were in the public interest.

22. 47 U.S.C. § 311(c) provides in part: "(c) (1) If there are pending before the Commission two or more applications for a permit for construction of a broadcasting station, only one of which can be granted, it shall be unlawful, without approval of the Commission, for the applicants or any of them to effectuate an agreement whereby one or more of such applicants withdraws his or their application or applications. (3) The Commission shall approve the agreement only if it determines that the agreement is consistent with the public interest, convenience, or necessity. If the agreement . . . contemplates the making of any direct or indirect payment to any party thereto in consideration of his withdrawal of his application, the Commission may . . . (approve) of such payment . . . not in excess of the aggregate amount determined by the Commission to have been legitimately and prudently expended. . . .

23. "In the case of a withdrawal involving applicants for a construction permit, the public interest suffers to the extent the Commission no longer has a choice of selecting the best qualified applicant. But that detriment is more than offset by the consideration that the withdrawal permits one of several qualified applicants to bring a needed service to the public without the lengthy delay involved in the multi-party comparative hearing." National Broadcasting Co., Inc., 25 Pike & Fischer R.R. 67, 73 (1963).

24. In Clarksburg Publishing Co. v. F.C.C., 96 U.S.App.D.C. 211, 220, 225 F.2d 511, 520 (1955) this court refused to uphold Commission approval of reimbursement without some inquiry into "itemization of expenses, identification of the parties negotiating the agreement, and details of the arrangements between competing applicants, in order to determine if improper consideration was paid or promised for dismissal."

25. Pike & Fischer R.R. 67 (1963).

26. *Id.* at 71. The Commission thus read § 311(c) as merely codifying the authority already possessed by the Commission with the specific limitation that payments exceeding legitimate and prudent expenses could not be allowed. *Id.* at 73, n. 5.

In *National Broadcasting*, Philco Corporation sought to withdraw its application for a construction permit filed in competition with NBC's request for renewal of its WRCV–TV license. As part of its request, Philco asked the Commission to approve NBC's offer to reimburse it for its expenses up to $550,000. Applying the policy of § 311(c), the Commission weighed the specific detriments and benefits to the public interest resulting from withdrawal of Philco's petition. If the litigation were terminated, the public would lose the opportunity to choose between applicants. This detriment would not be offset by a public interest goal since, unlike the situation covered by § 311(c), the public was already provided with service by NBC. The Commission therefore refused permission for reimbursement and for Philco's withdrawal.[27]

Philco and NBC raised other interests to justify termination of their litigation, but the Commission classified these as private, and inappropriate for it to consider. The Commission implied, however, that it would be willing to consider other genuine public interest goals which might offset the detriment of loss of choice.

Subsequent to the *National Broadcasting* decision, the Commission has further shown its willingness to approve reimbursement agreements to facilitate termination of litigation.[28] In the decision below the Commission purports to rely on this "line of cases"[29] for the proposition that it is "generally loath to permit payment of expenses."[30] However, the Commission has clearly stated in other recent decisions that its disinclination can be overcome by public interest considerations:

> "[I]n the absence of other countervailing considerations demonstrating that a grant of an agreement . . . is in the public interest, we in general look with disfavor upon agreements whereby an application for a new broadcast facility proposes to withdraw . . . upon reimbursement."[31]

The case before us is a compelling example of the obvious benefits to the public interest which result from withdrawal of certain petitions to deny. The Commission wrote that "the settlement

---

27. The Commission inferred that Philco might continue its suit if reimbursement were denied. Of course, Philco had the option of simply failing to persevere. *Id.* at 75.

28. Where competing applications for a new facility are filed but an interim operator has already been functioning: Great River Broadcasting, Inc., 16 Pike & Fischer R.R.2d .669 (1969) ; Grand Broadcasting Co., 5 Pike & Fischer R.R. 2d 527 (1965). Where the merger agreement of two competing petitioners, which includes reimbursement to outside parties, will result in improved service: Seven (7) League Productions, Inc., 9 Pike & Fischer R.R.2d 773 (1967) ; cf. Blue Island Community Broadcasting Co., Inc., 6 Pike & Fischer R.R.2d 137 (1965). Where competing applications in the renewal process were conceivably filed in a mistaken reliance on unclear Commission policy: Post-Newsweek Stations, Florida, Inc., 26 F.C.C.2d 982 (1970) ; National Broadcasting Co., Inc. (KNBC), 24 F.C.C.2d 218 (1970).

29. In its decision, the majority also relied on Tidewater Teleradio, Inc., 24 Pike & Fischer R.R. 653 (1962). In that case, a private competitor raised substantial charges in seeking to deny the transfer of a broadcast license from Tidewater to another corporation. This competitor then sought Commission approval of an agreement whereby it would accept an informal FCC opinion and would not file objections, seek reconsideration or appeal, in exchange for reimbursement of expenses covering more than its petition to deny. The Commission rejected this agreement as a "wholly improper" pay-off since the charges could not possibly be withdrawn. The relevance of this decision to the Church's request for reimbursement is negligible, since the FCC itself has ruled that the Church's charges were satisfactorily settled and could be withdrawn.

30. 25 F.C.C.2d at 603.

31. *KNBC, supra* note 28, 24 F.C.C.2d at 219.

of the issues between the station and the petitioning group is generally a desirable goal" because it promotes an atmosphere of "generous cooperation—not strife and suspicion" and "should prove to be more effective in improving local service than would be the imposition of strict guidelines by the Commission."[32] In permitting the Texarkana groups to withdraw their petition, the Commission cited these public benefits and mentioned no specific detriment to the public interest.[33]

It is therefore inexplicable that the Commission should reject the "spirit" of § 311(c) and its own line of cases in order to raise an absolute bar against reimbursement in all petitions to deny situations. In its opinion below, the majority revealed no reasons why the potential for abuse of reimbursement is sufficiently greater in a petition to deny situation to justify such a prohibition, and we can conceive of none.

We are not required in this case to consider whether there are reasons which would support a Commission policy prohibiting *all* reimbursement of expenses, since the Commission had already determined that the public interest is consistent with a policy of reimbursing some private interests, *e.g.* other applicants, who withdraw from further participation. In the context of this case, the public interest is likewise protected from abuse by the Commission's determinations that the public group seeking to withdraw is bona fide, and that the terms of its settlement with the local broadcaster serve the public interest.[34] Once these determinations are made,[35] voluntary reimbursement of legitimate and prudent expenses of the withdrawing group cannot be forbidden. The public interest therefore requires that the Commission's per se rule prohibiting reimbursement be overturned.

## V.

### Award of Reimbursement to Facilitate Public Participation

Appellant also asserts that a second, independent public interest goal requires approval of reimbursement in this case —facilitating the financial ability of groups like the Church to increase public participation in the renewal process. The Church draws support for this position from two of this court's decisions [36] which recognized the necessity of granting standing to public organizations before the Commission. In recent years, the concept that public participation in decisions which involve the public interest is not only valuable but indispensable has gained increasing support.[37]

It seems to us that the goal of facilitating public participation is necessarily furthered by the rule we have established above. Precisely because the ap-

---

32. 25 F.C.C.2d at 604.

33. Indeed, when a public group rather than a private competitor petitions to deny a local license, withdrawal of that petition entails no "loss of choice" since the group offers no alternative licensee.

34. This is essentially the inquiry proposed by Commissioners Burch and Johnson to assure that opportunists are not involved and that the merits of the dispute are not forsaken. *See* note 11, *supra.*

35. This is also the type of inquiry which the Commission is fully equipped to undertake. 25 F.C.C.2d at 611.

36. Office of Communication of United Church of Christ v. F.C.C., *supra* note 1, 123 U.S.App.D.C. 328, 359 F.2d 994; Office of Communication of United Church of Christ v. F.C.C., *supra* note, 1, 138 U.S.App.D.C. 112, 425 F.2d 543.

37. *See* Commissioner Cox's dissent in the instant case, 25 F.C.C.2d at 609. In the expanding field of environmental protection law, it has been held that "[i]n order to insure that the . . . [federal government] will adequately protect the public interest in the aesthetic, conservational, and recreational aspects . . . those who by their activities and conduct have exhibited a special interest in such areas," must be granted standing as an aggrieved party. Scenic Hudson Preservation Conf. v. Federal Power Com'n, 354 F.2d 608, 616 (2d Cir. 1965). *Cf.* Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 84, 439 F.2d 584, 594 (1971).

pellant Church represented public organizations was it able to achieve a settlement with KTAL which served the public interest in Texarkana. When such substantial results have been achieved, as in this case, voluntary [38] reimbursement which obviously facilitates and encourages the participation of groups like the Church in subsequent proceedings is entirely consonant with the public interest.[39]

## VI.

### Remand

■■ The operative principle established in Part IV thus remains—when the settlement of issues and termination of a petition to deny between the public and a broadcaster is in the public interest, voluntary reimbursement of the public group may be allowed. The Commission has already examined the underlying settlement and agreement to withdraw in this case and found them to be in the public interest.[40] However, the expenses submitted by the Church have not yet received the Commission's scrutiny. While it is difficult to believe that they will not be found to be "legitimate and prudent" in accordance with the standard of 47 U.S.C. § 311(c), the Commission must be given the opportunity to pass on them.

Accordingly, this case is remanded to the Commission for a determination of whether the expenses submitted by appellant meet this standard.

38. *Amicus Curiae*, Friends of the Earth, contends that §§ 154(i) and 303(r) of the Communications Act give the Commission ample authority to order a licensee to reimburse citizen groups which have filed petitions to deny. Compare these sections with § 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c), and the broad authority it vests in the National Labor Relations Board. International Union of Electrical, Radio and Mach. Workers v. N.L.R.B., 138 U.S.App.D.C. 249, 426 F.2d 1243 (1970).

39. Commissioner Cox in his dissent posed this issue to his colleagues and developed

from his experience and expertise an analysis which applies to the facts of this case. Commissioner Cox wrote: "I think that to allow reimbursement of the expenses of public groups who have been interested enough in the public's broadcast service to participate in the renewal process and who have won promises of improved service is clearly in the public interest." 25 F.C.C.2d at 610.

40. *KCMC, Inc., supra* note 3, 19 F.C.C.2d at 110.