**GREENSBORO TELEVISION COMPANY, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**No. 72-2017.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 19, 1973.

Decided Aug. 16, 1974.

Charles O. Verrill, Jr., Washington, D. C., for petitioner.

Lawrence W. Secrest, III, Counsel, Federal Communications Commission with whom John W. Pettit, Gen. Counsel and Joseph A. Marino, Associate Gen. Counsel, Federal Communications Commission, were on the brief, for respondents. Howard E. Shapiro, Atty., Dept. of Justice, entered an appearance for respondent, United States of America.

Before LEVENTHAL and ROBB, Circuit Judges, and MATTHEWS, * Senior United States District Judge for the United States District Court for the District of Columbia.

ROBB, Circuit Judge:

WFMY Television Corporation (WFMY) applied to the Federal Communications Commission (Commission) for renewal of the license of television broadcasting station WFMY-TV, Channel 2, Greensboro, North Carolina. The appellant, Greensboro Television Company (Greensboro) filed a competing application for a construction permit for a new television broadcasting station to operate on the same channel. Thereafter, following developments which we shall discuss later in this opinion, Greensboro and WFMY submitted to the Commission an agreement whereby Greensboro would dismiss its application and in return would be reimbursed for its expenses, not to exceed $44,195.00 by WFMY. The Commission refused to approve the agreement on the ground that it was not consistent with the public interest. 33 FCC2d 857, reconsideration denied, 37 FCC2d 339. Greensboro appeals, contending that the Commission's refusal was arbitrary. The case comes to this court pursuant to 47 U.S.C. § 402(b). *See* Tomah-Mauston Broadcasting Co. v. FCC, 113 U.S.App.D.C. 204, 306 F.2d 811 (1962). We affirm the Commission.

### I.

A chronological recital of relevant events will clarify the issue before us.

1. Greensboro filed its application on November 3, 1969.

2. On January 15, 1970 the Commission issued its Policy Statement on Com-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

parative Hearings Involving Regular Renewal Applicants. 22 FCC2d 424 (1970). In that Statement the Commission announced its policy to be: "that if the applicant for renewal of license shows in a hearing with a competing applicant that its program service during the preceding license term has been substantially attuned to meeting the needs and interests of its area, and that the operation of the station has not otherwise been characterized by serious deficiencies, he will be preferred over the newcomer and his application for renewal will be granted." [footnote omitted.] Under this policy, said the Commission, "If the Examiner, at the conclusion of the initial phase of a hearing dealing with a renewal applicant's past record, has no doubt that the existing licensee's record of service to the public is a substantial one, without serious deficiencies, he should, either on his own motion or that of the renewal applicant, halt the proceeding at this point and issue an initial decision based upon that determination." The Statement also announced that "as a general matter, the renewal process is not an appropriate way to restructure the broadcast industry" by bringing about a diversification of the media of mass communications. The Commission's view was that the question of diversification should be the subject of general rulemaking proceedings rather than *ad hoc* decisions in renewal hearings. This view was emphasized by the Commission when on April 6, 1970 it issued a Further Notice of Proposed Rulemaking (Docket No. 18, 110) which concerned the divestiture of broadcast properties by commonly owned newspapers in the same market.

3. On March 18, 1970 Greensboro filed a petition to designate as issues for hearing whether WFMY had failed to ascertain the needs and interests of the area it served and whether the grant of WFMY's application would result in undue concentration of control of the regional media by the parent company of WFMY. The Commission took no action on this petition.

4. On July 7, 1970 the Commission released its decision in National Broadcasting Co., Inc., 24 FCC2d 218 (1970), approving an agreement for the withdrawal of a new application, with payment by the renewal applicant of the expenses of the challenger. On November 16, 1970 the Commission released a similar decision in Post-Newsweek Stations, Fla., Inc., 26 FCC2d 982 (1970).

5. On May 28, 1971 Greensboro and WFMY filed their joint petition for approval of their agreement for the withdrawal of the Greensboro application upon payment of Greensboro's expenses by WFMY. The joint petition averred that Greensboro had filed its competing application on the assumption that it would be accorded a comparative hearing in which such factors as ascertainment of community needs, diversification of media ownership, integration of ownership and management, and local management would be litigated. On this premise also, said the petition, Greensboro had filed its petition of March 18, 1970 to designate issues for hearing; but Greensboro had now decided that its case had been substantially weakened by the Commission's Policy Statement of January 15, 1970, and by extensive amendment to WFMY's application. Accordingly, in the light of the Commission's decisions in *National Broadcasting Co., Inc., supra,* and *Post-Newsweek Stations, Fla., Inc., supra,* the petition submitted that reimbursement of Greensboro should be approved.

The petition referred to the statement in n. 7 in the Commission's Policy Statement "that barring extraordinary circumstances, the challenger to a renewal cannot be reimbursed in any amount for his expenditures in preparing and prosecuting his application." The petitioners submitted that the Commission's Policy Statement of January 15, 1970 was an "extraordinary circumstance" justifying approval of the agreement for reimbursement.

6. While the Greensboro-WFMY petition was pending, on June 11, 1971

this court held that the Commission's Policy Statement of January 15, 1970 was invalid. Citizens Communications Center v. FCC, 145 U.S.App.D.C. 32, 447 F.2d 1201 (1971).

7. On March 2, 1972 the Commission denied the petition for withdrawal and reimbursement.

## II.

For many years the Commission has looked with disfavor on any agreement between an applicant for renewal and a competing applicant for a construction permit whereby the challenger withdraws in return for the payment of his expenses by the renewal applicant. The Commission formulated this principle in National Broadcasting Co., Inc., 25 RR 67 (1963). *See* Office of Communication of United Ch. of Christ v. FCC, 150 U.S.App.D.C. 339, 345–346, 465 F.2d 519, 525–526 (1972). In the *National Broadcasting* case the Commission refused to approve an agreement between Philco and NBC whereby Philco would withdraw its application for a channel then licensed to NBC and NBC would reimburse Philco for its expenses in the prosecution of its application. In keeping with the policy of section 311(c) of the Communications Act, 47 U.S.C. § 311(c) the Commission reasoned that such an agreement should be approved only after the Commission determined that it was consistent with the public interest. Applying this principle the Commission held that in the absence of unique circumstances a withdrawal agreement between a renewal applicant and an applicant for a construction permit is inconsistent with the public interest, since it deprives the Commission and the public of a choice between the existing licensee and the challenging applicant.

The appellant Greesboro argues that unique circumstances existed in this case, so that the Commission's refusal to approve the payment of Greensboro's expenses was arbitrary. Specifically, Greensboro points to (1) the Commission's Policy Statement of January 15, 1970, which undercut the application for a construction permit, and (2) the Commission's 1970 decisions in *National Broadcasting Co., Inc.,* and *Post-Newsweek Stations, Fla., Inc.,* approving agreements for the withdrawal of applications with payment by the renewal applicant of the expenses of the challenger. Greensboro says:

> The Commission's retroactive application of the determination to discontinue waiving the policy of the 1963 NBC decision was arbitrary when applied to Greensboro, since Greensboro changed position in reliance on factually similar decisions in which waivers were granted.

We find this argument unpersuasive.

■ When Greensboro filed its application it assumed that a comparative hearing would follow and it was charged with notice that under the doctrine of the 1963 NBC case an agreement for its withdrawal and the payment of its expenses by WFMY would be approved only in unique circumstances. The Commission's 1970 decisions in *National Broadcasting Co., Inc.,* and *Post-Newsweek Stations, Fla., Inc.,* held that the Policy Statement of January 15, 1970 was such a unique circumstance. Accordingly, since the Policy Statement was in effect when those decisions were rendered, the .Commission permitted withdrawal and reimbursement. When the Greensboro-WFMY joint petition was denied however the Policy Statement had been invalidated by this court. In other words, the "unique circumstance" had been eliminated and the *status quo ante* had been restored. In this situation we think it was reasonable for the Commission to weigh the petition against the standard established by its 1963 NBC decision.

■ The Commission's 1970 decisions in *National Broadcasting Co., Inc.,* and *Post-Newsweek Stations, Fla., Inc.,* were premised upon the existence and validity of its Policy Statement of January 15, 1970; and the Commission considered that the Policy Statement constituted an

unusual or unique circumstance justifying withdrawal and reimbursement in those cases. In Greensboro's case however the Commission reasonably concluded that the elimination of the Policy Statement also eliminated both the "unique circumstance" and any controlling effect of the previous 1970 decisions allowing reimbursement.[1] The 1970 cases were not, as Greensboro contends, "factually similar" to its case.

Greensboro argues in its brief that "prior Commission precedent clearly establishes the principle that the mere filing of the Withdrawal Agreement substantially reduced Greensboro's chances of success in a comparative hearing." In support of this proposition Greensboro cites National Broadcasting Co., Inc. (Philco), 2 RR2d 921 (1964). That case, says Greensboro, established "that the mere filing of a withdrawal agreement by a competing applicant in a renewal situation, disqualifies that applicant from receiving a grant, even though the Commission decides to reject the withdrawal agreement on the grounds that the public interest demands a choice of applicants." Greensboro concludes that it was unfairly prejudiced because it filed the withdrawal agreement in reliance upon the Policy Statement of 1970 and the two Commission decisions allowing reimbursement.

The Commission's decision in the *NBC-Philco* case was based on facts and circumstances and a pattern of conduct by Philco which are not found in Greensboro's case. *See* 2 RR2d 921, 942–943 (1964). In any event, without pausing to consider the precedential value of the *NBC-Philco* decision in this case, we think there was no reliance by Greensboro to its prejudice. We read the Commission's order providing that Greensboro will be entitled to a comparative hearing to mean that it is entitled to a fair hearing. A fair hearing must

be one in which Greensboro will not be prejudiced in any way because in good faith it filed a withdrawal agreement at a time when the Policy Statement was in effect and decisions relying upon it had been issued. We are reinforced in this conclusion by the formal statement of the Commission's General Counsel filed in this court: "The Commission has specifically authorized me to inform the Court that Greensboro Television Company's attempt to withdraw its license application and be reimbursed for its expenses will in no way affect consideration of its application." We therefore conclude and hold, as a matter of law, that there must and will be no prejudice to Greensboro because of the withdrawal petition if Greensboro wishes to persevere in its application.

The Commission's Order is

Affirmed.

---

1. We think also that the Commission reasonably rejected the contention that approval of the withdrawal agreement would serve the public interest by eliminating the need for a protracted comparative hearing which would

burden the Commission and its staff and require the expenditure of substantial funds by WFMY. Such considerations are present in the case of every comparative hearing.