**BARTHOLDI CABLE COMPANY, INC., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**Time Warner Cable of New York City and Paragon Communications, Intervenors.**

Nos. 96–1030, 96–1094.

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1997.

Decided June 3, 1997.

Clifford M. Sloan, Washington, DC, argued the cause for petitioner Bartholdi Cable Company, Inc., with whom Robert L. Pettit, Washington, DC, and Robert L. Begleiter, New York City, were on the briefs. Larry S. Solomon, Washington, DC, entered an appearance.

R. Bruce Beckner, Washington, DC, argued the cause for petitioner Time Warner Cable of New York City and Paragon Communications, with whom Arthur H. Harding and Jill Kleppe McClelland were on the briefs.

Joel Marcus, Counsel, Federal Communications Commission, Washington, DC, argued the cause for respondent, with whom William E. Kennard, General Counsel, and Daniel M. Armstrong, Associate General Counsel, were on the brief. Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys, United States Department of Justice, entered appearances.

Clifford M. Sloan, Washington, DC, argued the cause for Bartholdi Cable Company, Inc., as intervenor, with whom Robert L. Pettit, Washington, DC, and Robert L. Begleiter, New York City, were on the brief. Larry S. Solomon, Washington, DC, entered an appearance.

Arthur H. Harding, R. Bruce Beckner, and Jill Kleppe McClelland, Washington, DC, filed a brief for Time Warner Cable of New York City and Paragon Communications as intervenors.

Before SILBERMAN, SENTELLE and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Bartholdi Cable Co. ("Bartholdi") and Time Warner Cable of New York City ("Time Warner") petition for review of a Federal Communications Commission ("FCC" or "Commission") order rejecting Bartholdi's claim that material it submitted to the Commission was protected from public disclosure by the attorney-client and work-product privileges as well as Exemptions 4 and 6 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. For the reasons discussed below, we deny Bartholdi's petition for review and dismiss Time Warner's petition for lack of jurisdiction.

## I. Background

In 1991, the FCC authorized the licensing of radio frequencies known as operational fixed microwave service ("OFS") for the distribution of video programming to the public. Since that time, Bartholdi (formerly known as Liberty Cable Co., Inc.) has used OFS "paths" to provide multi-channel video programming to approximately 30,000 subscribers in apartment buildings in the New York metropolitan area.

In order for Bartholdi to provide its service lawfully, it must first obtain from the Commission an OFS license for each microwave path between a radio station and a receiver located on the roof of the building that contracted to receive Bartholdi service. In order to expedite provision of service to subscribers, Bartholdi has applied for and the Commission has granted Special Temporary Authority pursuant to 47 U.S.C. § 309(f) and 47 C.F.R. § 101.31, allowing Bartholdi to provide service pending license approval.

In March 1995, Bartholdi applied to the FCC for a number of OFS licenses. Time Warner, a competitor of Bartholdi, petitioned to deny the applications. On May 5, 1995, in one of its petitions to deny Bartholdi's OFS license applications, Time Warner informed the Commission of its discovery that Bartholdi had begun using two OFS paths without licenses.

In the meantime, Bartholdi purportedly discovered that it had begun providing service to some buildings in New York without prior authorization from the Commission. Bartholdi admitted premature activation of service to the two buildings identified by Time Warner and "immediately" began investigating the cause of the premature activations. Bartholdi also disclosed to the Commission the existence of thirteen other prematurely activated buildings. As a result of these revelations, Bartholdi's chairman retained outside counsel to determine the cause of the premature activations and to institute a compliance program.

Outside counsel conducted an "exhaustive" investigation of Bartholdi's company records and interviewed all persons with relevant knowledge. Outside counsel then prepared a comprehensive report. The report contains a description of Bartholdi's internal business and licensing operations, information concerning Bartholdi's customers, the history of management breakdown that led to the premature activations, and the identity, functions, and performance evaluations of various Bartholdi personnel.

In light of Bartholdi's disclosed violations, the Chief of the FCC's Microwave Branch sent a letter to Bartholdi on June 9, 1995, requesting that Bartholdi provide additional information concerning its unlicensed operations. In response to this request, Bartholdi submitted, *inter alia,* a chart showing the addresses, dates of commencement of service, and number of subscribers at each of the fifteen buildings that received unauthorized service. On the same day, Bartholdi's president informed the Wireless Telecommunications Bureau ("WTB") that "[a] complete investigation of this administrative foul-up is currently being conducted by outside counsel." Shortly thereafter, Bartholdi revealed an additional four instances of unlicensed service, bringing the total number to nineteen.

After that revelation, the Chief of the Enforcement Division of the WTB directed Bartholdi "to submit to the Commission the results of its recently conducted internal audit." Specifically, Bartholdi's report to the Commission was to list (1) "*all* of the OFS paths which [Bartholdi] has constructed and/or operated without authority," (2) "which of these unauthorized paths were not disclosed to the Commission in response to its letter of June [9], 1995," (3) "the date each unauthorized path was constructed and placed in operation," (4) "the number of subscribers currently being served by each new path," and (5) "whether [Bartholdi] is charging subscribers for service received via these unauthorized paths."

Several days later Bartholdi responded to the WTB's request by submitting a letter summarizing the findings of Bartholdi's outside counsel; a detailed list of unauthorized operations, number of subscribers, commencement dates, and charged subscribers; and the full text of the outside counsel's report as well as certain documents and communications attached to the report. These submissions were accompanied by a request that they remain confidential under Exemptions 4 and 6 of FOIA. Alternatively, to the extent the WTB determined that the submissions should not remain confidential, Bartholdi requested that the submissions be returned without consideration pursuant to 47 C.F.R. § 0.459(e). Bartholdi's request for confidentiality also made passing reference to the attorney-client and work-product privileges.

On September 13, 1995, the WTB denied Bartholdi's request for confidentiality and ordered that Bartholdi disclose the submitted materials to Time Warner and the general public. Bartholdi filed an application for review with the Commission on September 20, 1995, seeking reversal of the WTB's ruling. The application for review contained extensive discussion of Bartholdi's claims for confidentiality under Exemptions 4 and 6 of FOIA. However, the application contained no discussion of the attorney-client or work-product privileges, nor did it make mention of 47 C.F.R. § 0.459(e).

The Commission denied Bartholdi's application for review and "affirm[ed] the WTB's ruling in all ... respects." *Liberty Cable Co., Inc.,* 11 F.C.C.R. at 2475, 2475 (1996). The Commission rejected Bartholdi's Exemption 4 confidentiality claim on the ground that Bartholdi failed to establish that disclosure of the information submitted to the Commission would result in "competitive harm." *Id.* at 2476. Alternatively, the Commission rejected the Exemption 4 claim on the ground that "public interest considerations favoring openness in ... licensing proceedings ... outweigh any need to protect the audit report from disclosure." *Id.* at 2477. Similarly, the Commission rejected Bartholdi's Exemption 6 claim on the ground that "significant public policy considerations warrant disclosure." *Id.* As for Bartholdi's privilege claims, the Commission noted that Bartholdi's application for review "does not even mention, let alone discuss, these privileges." *Id.* In any event, the Commission rejected the privilege claims on the ground that Bartholdi had failed "to provide any specific information or explanation to substantiate its generalized claims of privilege." *Id.* Bartholdi then sought and obtained an emergency stay from this court. This petition for review followed.

## II. Analysis

■ Bartholdi maintains that the Commission's decision was arbitrary and capricious. 5 U.S.C. § 706(2)(A). Under the arbitrary and capricious standard of review, we do not "substitute [our] judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the*

*United States, Inc. v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Rather, we look only to see whether the agency action reflects a " 'clear error in judgment.' " *Bell Atl. Tel. Cos. v. FCC,* 79 F.3d 1195, 1202 (D.C.Cir.1996) (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)).

### A. Attorney-client and Work-product Privileges.

■ Bartholdi first contends that the Commission's rejection of the privilege claims does not reflect reasoned decisionmaking. We need not reach that issue as we conclude that Bartholdi's claims of privilege were not properly raised before the Commission. Section 405 of the Communications Act provides that the Commission must be afforded an "opportunity to pass" on an issue as a condition precedent to judicial review. 47 U.S.C. § 405(a)(2). In this case, Bartholdi raised its privilege claims, if at all, only before the WTB. Bartholdi's application for review to the Commission made no mention of either the attorney-client or work-product privilege. Under the plain language of Section 405, an issue cannot be preserved for judicial review simply by raising it before a Bureau of the FCC. It is "the Commission" itself that must be afforded the opportunity to pass on the issue. *Id.*; *cf. Parsippany Hotel Management Co. v. NLRB,* 99 F.3d 413, 418 (D.C.Cir.1996) (holding that issue raised before ALJ, but not NLRB, was not preserved).

■ Bartholdi contends that it preserved the privilege claims by attaching an affidavit discussing the issue to its application for review filed with the Commission. In a similar vein, Bartholdi claims that a footnote in its application for review incorporating all claims made before the WTB was sufficient to preserve the issue for our review. We reject each of these arguments. The Commission "need not sift pleadings and documents to identify" arguments that are not "stated with clarity" by a petitioner. *See WAIT Radio v. FCC,* 418 F.2d 1153, 1157 (D.C.Cir.1969), *cert. denied,* 409 U.S. 1027, 93 S.Ct. 461, 34 L.Ed.2d 321 (1972). It is the

petitioner that has the "burden of clarifying its position" before the agency. *Northside Sanitary Landfill, Inc. v. Thomas,* 849 F.2d 1516, 1519 (D.C.Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989). In this case, Bartholdi failed to carry that burden. Bartholdi "should have assumed at least a modicum of responsibility for flagging the relevant issues which its documentary submissions presented." *Id.; see also Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 553, 98 S.Ct. 1197, 1216, 55 L.Ed.2d 460 (1978). By failing to do so, Bartholdi waived its privilege claims. Bartholdi, however, argues that even if it failed to raise the privilege claims before the Commission, the claims are properly before us because they were actually addressed by the Commission. We disagree. The mere fact that the Commission discusses an issue does not mean that it was provided a meaningful "opportunity to pass" on the issue. It is only through the adversarial process (or analogous circumstances) that the Commission is afforded such an opportunity within the meaning of § 405.

■ We, of course, recognize that § 405 does not require that the party seeking judicial review of an issue be the party that provided the Commission with the opportunity to pass on the issue. As a result, we have considered issues that were addressed by the Commission after being presented by someone other than the petitioner. *E.g., Office of Communication of the United Church of Christ v. FCC,* 779 F.2d 702, 707 (D.C.Cir. 1985) (considering issue raised before the Commission by another party); *Office of Communication of the United Church of Christ v. FCC,* 465 F.2d 519, 523–24 (D.C.Cir. 1972) (considering issue raised by dissenting commissioners). But petitioner cites no case in which we held that the mere fact that the Commission addressed an issue was sufficient to preserve the issue for judicial review. Indeed, we have rejected such arguments in analogous contexts. *Cf. Local 900 Int'l Un-*

*ion of Elec., Radio and Mach. Workers v. NLRB,* 727 F.2d 1184, 1191 (D.C.Cir.1984) (holding that discussion of an issue by the NLRB did not necessarily prove compliance with § 10(e) of the NLRA requiring that issues be raised before the Board in order to obtain judicial review of such); *Parsippany Hotel,* 99 F.3d at 418 (holding that discussion of an issue in an ALJ opinion adopted by the Board was "insufficient to satisfy the requirements" of § 10(e) of the NLRA); *Burkhart v. WMATA,* 112 F.3d 1207, 1215 (D.C.Cir.1997) (holding that district court's discussion of an alternative ground for its decision did not undermine its ruling that appellant's claim was untimely raised).[1]

■ In any event, Bartholdi's challenge to the Commission's ruling on the privilege claims must fail. The Commission rejected Bartholdi's claims of privilege on the ground that they were not "substantiate[d]." 11 F.C.C.R. at 2477. We have repeatedly held that the party claiming a privilege has the burden of "present[ing] to the court sufficient facts to establish the privilege." *In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984). Bartholdi's application for review filed with the Commission made no mention of the attorney-client or work-product privileges, much less attempted to establish the existence of such. Under these circumstances, we cannot find the Commission's rejection of the privilege claims to be arbitrary or capricious.

### B. FOIA.

■ Bartholdi further argues that its submissions to the Commission are protected from disclosure by FOIA. FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fit within one or more of nine categories of exempt material." *Oglesby v. United States Dep't of the Army,* 79 F.3d 1172, 1176 (D.C.Cir.1996); 5 U.S.C.

---

1. Petitioner cites our opinion in *Washington Ass'n for Television & Children v. F.C.C.,* 712 F.2d 677, 682 & n. 10 (D.C.Cir.1983), where we stated that "it is not always necessary for a party to raise an issue, so long as the Commission in fact considered the issue." But that statement was at most dicta. Moreover, none of the cases cited in support of that statement involved consideration of an issue by this or any other circuit in an adjudicatory proceeding when the issue was not presented to the Commission.

§ 552. Bartholdi contends that its submissions fall within FOIA Exemptions 4 and 6.

1. Exemption 4.

 Exemption 4 of FOIA provides that an agency need not disclose information that is "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The test for whether information is "confidential" depends in part on whether the information was voluntarily or involuntarily disclosed to the government. If the information was voluntarily disclosed to the government, it will be considered confidential "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879 (D.C.Cir.1992) (en banc), *cert. denied*, 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993). If the information was obtained under compulsion, it will be considered confidential only "if disclosure ... is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974).

 Of course, the mere fact that information falls within a FOIA exemption does not of itself bar an agency from disclosing the information. *Chrysler Corp. v. Brown*, 441 U.S. 281, 293, 99 S.Ct. 1705, 1713, 60 L.Ed.2d 208 (1979). But we have held that information falling within Exemption 4 of FOIA also comes within the Trade Secrets Act, 18 U.S.C. § 1905, which prohibits the disclosure of, *inter alia*, "trade secrets" and "confidential statistical data." *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C.Cir.1987) (holding that "the scope of the [Trade Secrets] Act is at least co-extensive with that of Exemption 4 of FOIA"), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). Thus, generally when "a party succeeds in demonstrating that its materials fall within Exemption 4, the government is precluded from releasing the information by virtue of the Trade Secrets Act." *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C.Cir.1995). However, information otherwise protected by the Trade Secrets Act may be disclosed if "authorized by law." *See* 18 U.S.C. § 1905. The Supreme Court has held that the release of otherwise protected information to the public is "authorized by law" if permitted by a regulation that is: (1) "rooted in a grant of power by the Congress" to limit the scope of the Trade Secrets Act; (2) "substantive," rather than interpretive or procedural; and (3) consistent "with any procedural requirements imposed by Congress" such as the APA. *Chrysler*, 441 U.S. at 302–03, 99 S.Ct. at 1718.

Section 0.457 of the Commission's regulations permits disclosure of exempt materials to the extent "the policy considerations favoring non-disclosure" are outweighed by factors favoring disclosure. 47 C.F.R. § 0.457. The Commission has held that this regulation is "authorized by law" as that phrase was defined by the Supreme Court in *Chrysler*. *In the Matter of Examination of Current Policy Concerning the Treatment of Confidential Information Submitted to the Commission: Notice of Inquiry*, 11 F.C.C.R. 12406 (1996). Pursuant to § 0.457, the WTB ruled that "the public interest in disclosure of [Bartholdi's] materials would justify disclosure as a matter of our discretion even if the materials could be withheld under the FOIA." *See* Letter from Ralph A. Haller, Deputy Chief, WTB, to Henry M. Rivera et al., Counsel for Bartholdi 4 (Sept. 13, 1995). The Commission affirmed this conclusion in its order, holding that "public interest considerations favoring openness in our licensing proceedings outweigh any potential difficulty that the Government might experience in obtaining access to information in similar circumstances." 11 F.C.C.R. at 2477.

 Bartholdi argues that § 0.457 of the Commission's regulations does not meet the definition of "authorized by law" under *Chrysler*. But Bartholdi did not raise this challenge before the Commission. Bartholdi's application for review made no mention of *Chrysler*. Because Bartholdi failed to challenge the validity of § 0.457 before the

Commission, we decline to consider the issue. 47 U.S.C. § 405.

■ Therefore, assuming the validity of § 0.457, we cannot conclude that the Commission acted arbitrarily in concluding that the public interest considerations in disclosure outweighed those in favor of confidentiality. As the Commission now explains, much of the information for which Bartholdi seeks confidential treatment is already publicly available. Moreover, the Commission concluded that the public has a compelling interest in the information at issue as it bears directly on Bartholdi's fitness as a license applicant. Bartholdi chastises the Commission for failing to articulate these rationales in its order. But a more explicit discussion in the Commission's order would have risked disclosure of the information Bartholdi was attempting to keep confidential. We cannot fault the Commission for attempting to maintain the confidentiality of Bartholdi's submissions pending judicial review.

### 2. Exemption 6.

Exemption 6 of FOIA permits the Government to withhold from public disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Commission held that "[t]he documents at issue are not medical files nor do we find them to be the type of records typically found in personnel files." 11 F.C.C.R. at 2477. The Commission declined to determine whether Bartholdi's submissions constituted "similar files," because "even assuming a protectable privacy interest does exist," the Commission concluded "that significant public policy considerations warrant[ed] disclosure." *Id.* (footnote omitted).

■ Bartholdi does not challenge the Commission's conclusion that the submissions are not personnel or medical files. Rather, Bartholdi argues that the Commission improperly balanced the competing privacy and public interests at issue in deciding to release the submissions. In *United States Dep't of Defense v. FLRA,* the Supreme Court explained that to determine whether requested information falls within Exemption 6, " 'a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect.' " 510 U.S. 487, 495, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994) (quoting *Department of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 776, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989)) (alteration in original). "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government.'* " *Id.* (quoting *Reporters Comm.,* 489 U.S. at 775, 109 S.Ct. at 1483 (internal quotation marks omitted)) (alteration and emphasis in original). According to Bartholdi, the Commission's decision to allow public access to its submissions does not serve this core purpose of FOIA. We disagree.

Bartholdi's submissions consist of descriptions of Bartholdi's mismanagement of its employees. This information is clearly relevant to the public's understanding of the type of entities to which the government is distributing a valuable public asset, FCC licenses. On the other side of the scale, the Commission found only a "minor" privacy interest in protecting the identity of the individuals responsible for Bartholdi's violation given that these individuals have been identified in public documents filed with the Commission by Bartholdi. 11 F.C.C.R. at 2477. We cannot say that the Commission's balancing of these competing interests was arbitrary or capricious.

Moreover, even were Bartholdi correct that its submissions fall within Exemption 6, the Commission is not *required* to withhold the information from public disclosure. The fact that information falls within one of the FOIA exemptions does not necessarily mean that the agency cannot disclose the material. FOIA's exemptions simply permit, but do not require, an agency to withhold exempted information from the public. *Chrysler Corp.,* 441 U.S. at 293, 99 S.Ct. at 1713. Unlike information falling within Exemption 4, information falling within Exemption 6 is not

necessarily protected from disclosure by the Trade Secrets Act.

*C. 47 C.F.R. § 0.459(e).*

 Finally, Bartholdi contends that the Commission acted arbitrarily when it failed to return Bartholdi's submissions after rejecting its request for confidentiality. The Commission's regulations provide that when information is voluntarily submitted to the FCC, the Commission will "ordinarily" return the information "without consideration if the request for confidentiality should be denied." 47 C.F.R. § 0.459(e). Even assuming, *arguendo,* that Bartholdi's submissions to the Commission were voluntary, we need not determine whether the Commission acted arbitrarily in failing to return Bartholdi's submissions. This claim was not raised in Bartholdi's application for review to the Commission, and was thus waived. 47 U.S.C. § 405.

*D. Ex Parte Rules.*

Time Warner also petitions for review of the Commission's order, arguing that the Commission arbitrarily concluded that Bartholdi had not violated the FCC's *ex parte* rules. Because a ruling in Time Warner's favor would alter the reasoning, but not the outcome of this case, we dismiss Time Warner's petition for lack of jurisdiction. *Radiofone, Inc. v. FCC,* 759 F.2d 936, 940 (D.C.Cir.1985) (holding that "no standing exists to litigate an abstract dispute over the Commission's reasoning").

### III. Conclusion

For the foregoing reasons, we conclude that Bartholdi's challenges to the Commission's order are without merit. Its petition for review is therefore denied. We also dismiss Time Warner's petition for lack of jurisdiction.