712 F.2d 677
 229 U.S.App.D.C. 363, 9 Media L. Rep. 2160
 WASHINGTON ASSOCIATION FOR TELEVISION AND CHILDREN, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
National Broadcasting Company, Evening News Association,
WJLA, Inc., Intervenors.
 No. 82-1524.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 11, 1983.
Decided July 19, 1983.
As Amended July 22, 1983.
 
 [229 U.S.App.D.C. 364] Appeal from an Order of the Federal Communications Commission.
 Angela J. Campbell, Washington, D.C., with whom Wilhelmina Reuben Cooke, Washington, D.C., was on brief, for appellant.
 C. Grey Pash, Jr., Attorney, F.C.C., Washington, D.C., with whom Stephen A. Sharp, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on brief, for appellee.
 Arthur B. Goodkind, Washington, D.C., was on brief for intervenor, National Broadcasting Co., Inc.
 J. Laurent Scharff and Jack N. Goodman, Washington, D.C., were on brief for intervenor, Evening News Ass'n.
 Howard F. Roycroft, Washington, D.C., was on brief for intervenor, WJLA, Inc.
 Before ROBINSON, Chief Judge, WALD, Circuit Judge, and GORDON,* Senior District Judge for the Western District of Kentucky.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 Petitioner Washington Association for Television and Children (WATCH) filed petitions with the Federal Communications Commission (FCC or Commission) opposing the license renewals of three television stations in Washington, D.C. on the grounds that the stations had failed to provide any regularly scheduled weekday children's programs, in contravention of Commission policy. The Commission granted the license renewals without holding a hearing, explaining [229 U.S.App.D.C. 365] that although licensees had a duty to provide weekday children's programming, they had no duty to provide it on a regularly scheduled basis. Evening News Association, 89 F.C.C.2d 911 (1982). WATCH appeals the Commission's refusal to hold a hearing. We conclude that the Commission reasonably interpreted its prior policy statement as not imposing a flat requirement that all television stations provide regularly scheduled weekday children's programs.
 
 I. BACKGROUND
 
 2
 A. The Commission's Policy on Children's Programming
 
 
 3
 In 1974, the FCC, after a lengthy rulemaking, issued a Children's Television Report and Policy Statement ("Children's Policy Statement") in which it outlined broadcasters' duty to provide children's programming. 50 F.C.C.2d 1 (1974), reconsid. denied, 55 F.C.C.2d 691 (1975).[1]
 
 
 4
 The FCC found that "broadcasters have a special obligation to serve children," 50 F.C.C.2d at 5, but declined to establish numerical requirements for what quantity of children's programming would satisfy that obligation. The Commission decided instead to consider "on an ad hoc basis" whether TV stations were devoting enough time to children's shows. Id. at 6 (footnote omitted). The Commission emphasized, however, that:
 
 
 5
 [W]e do expect stations to make a meaningful effort in this area.... [A] few stations present no programs at all for children. We trust that this Report will make it clear that such performance will not be acceptable....
 
 
 6
 Id.
 
 
 7
 The Commission also expressed concern over the "tendency on the part of many stations to confine all or most of their children's programming to Saturday and Sunday mornings" and the "relative absence" of weekday programming. Id. at 8. While it again declined to adopt a "specific scheduling rule," the Commission explained that:
 
 
 8
 [I]t is [not] a reasonable scheduling practice to relegate all [children's] programming ... to one or two days ... [and] we do expect to see considerable improvement in scheduling practices in the future.
 
 
 9
 Id. In short, the Commission expected television stations to provide weekday children's programming, but did not specify how much or what kind.
 
 B. Proceedings Before the Commission
 
 10
 All television stations must periodically apply to the FCC to have their licenses renewed. The FCC may generally grant a license renewal without a hearing if it finds that the "public interest, convenience, and necessity" will be served by granting the renewal. 47 U.S.C. § 309(a). The Commission must, however, hold a hearing to determine whether to grant a renewal if: (1) it receives a petition to deny the renewal that raises a "substantial and material question of fact"; or (2) "the Commission for any reason is unable to make the finding [that the public interest, convenience, and necessity will be served by granting the license]." Id. § 309(e); see United States v. FCC, 652 F.2d 72, 88-90 (D.C.Cir.1980) (en banc); Bilingual Bicultural Coalition on Mass Media, Inc. v. FCC, 595 F.2d 621, 629-31 (D.C.Cir.1978) (en banc).
 
 
 11
 When the NBC, CBS, and ABC-affiliated stations in Washington, D.C. requested renewal of their licenses, WATCH filed petitions to deny the renewals, claiming that the Children's Policy Statement requires all television stations to broadcast regularly scheduled weekday children's programs and that the stations had not met this requirement.[2] WATCH asked the Commission to [229 U.S.App.D.C. 366] hold a hearing on whether to renew the stations' licenses.
 
 
 12
 The stations' failure to broadcast regularly scheduled weekday children's programs is not in dispute. We therefore deal only with the second requirement for a hearing: whether the Commission was unable to find that renewal is in the "public interest."
 
 
 13
 WATCH "purposefully restricted [its petition] to this single issue" of regularly scheduled weekday programming and addressed neither the quality nor the quantity of non-regularly scheduled children's programs. WATCH Petition to Deny (NBC), at 6 n. 6, J.A. at 6, 11 n. 6. In response, the stations admitted carrying no regularly scheduled programs but claimed to present "an adequate amount of [non-regularly scheduled] children's programming." Evening News Association, 89 F.C.C.2d at 912. In replying to the stations, WATCH did not address "the quantity or sufficiency of the weekday children's programming described by the licensees." Id. at 913. Instead, it "reiterate[d]" that it was "not challenging [the stations'] programming decisions on the basis of content or quality, but simply on [their] failure to provide any regularly scheduled weekday children's programming." WATCH Reply to Opposition to Petition to Deny (NBC) at 7, J.A. at 144, 150 (footnote omitted).
 
 
 14
 The Commission found that the Policy Statement did not require stations to provide regularly scheduled programs so long as the stations provided an adequate amount of non-regularly scheduled programming. It therefore rejected WATCH's request for a hearing and granted the license renewals. Evening News Association, 89 F.C.C.2d at 915. The Commission did not address whether the licensees in fact provided adequate weekday children's programming; it believed that WATCH had not raised that issue. See id. ("WATCH specifically limits its petitions to the single issue of ... regularly scheduled weekday children's programming") (emphasis in original).
 
 
 15
 WATCH appealed directly to this court without petitioning the FCC for rehearing.
 
 C. Proceedings Before this Court
 
 16
 In its opening brief to this court, WATCH again states the issue as whether the FCC was required to hold a hearing "where ... the licensees provided no regularly scheduled weekday programming for children." WATCH Brief at 2 (emphasis added). In its reply brief, WATCH for the first time complains that it meant to object more broadly to the "general sufficiency of the licensees' weekday programming," WATCH Reply Brief at 6, and that it used the absence of regularly scheduled programming merely to "illustrate[ ]" that general objection, id. at 4. Moreover, there is some force to its argument that the one or two hours per month of weekday children's specials broadcast by each of the three stations do not measure up to the Commission's expectation of "considerable improvement in scheduling."
 
 
 17
 Our first task is to consider whether this broader claim is properly before us. We hold in part II that it is not. In part III, we affirm the FCC's interpretation of the Children's Policy Statement as not unequivocally requiring television stations to broadcast regularly scheduled weekday children's programs.
 
 II. EXHAUSTION OF ADMINISTRATIVE REMEDIES
 
 18
 As a general rule, claims not presented to the agency may not be made for the first time to a reviewing court. See United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952):
 
 
 19
 Simple fairness ... requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.
 
 
 20
 [229 U.S.App.D.C. 367] Accord Portland Cement Association v. Ruckelshaus, 486 F.2d 375, 394 (D.C.Cir.1973), cert. denied, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). See generally 4 K. Davis, Administrative Law Treatise § 26:7 (2d ed. 1983). Moreover, this general requirement of exhaustion of administrative remedies is explicitly codified in 47 U.S.C. § 405, which requires parties to petition the FCC for rehearing before raising a new issue on judicial review:
 
 
 21
 The filing of a petition for rehearing shall not be a condition precedent to judicial review of [an FCC decision] except where the party seeking such review ... relies on questions of law or fact upon which the Commission ... has been afforded no opportunity to pass.
 
 
 22
 Our cases construe § 405 to require complainants, before coming to court, to give the FCC a "fair opportunity" to pass on a legal or factual argument. Alianza Federal de Mercedes v. FCC, 539 F.2d 732, 739 (D.C.Cir.1976); accord United States v. FCC, 707 F.2d 610, 619 (D.C.1983); Rogers Radio Communication Services v. FCC, 593 F.2d 1225, 1229-30 (D.C.Cir.1978).[3] In this case, we do not think the Commission had a fair opportunity to decide whether the stations' non-regularly scheduled weekday programming was adequate.
 
 
 23
 First, WATCH never explicitly alleged the general inadequacy of the stations' weekday programming. Quite the contrary, WATCH recited its intent to raise the "single issue" whether the Children's Policy Statement required regularly scheduled weekday programming. WATCH Petition to Deny (NBC) at 6 n. 6, J.A. at 11 n. 6. The FCC reasonably took WATCH's petition at face value. Second, the Commission clearly stated its understanding that WATCH objected only to the absence of regularly scheduled programming. See 89 F.C.C.2d at 915 (quoted in part I.B supra ). If WATCH believed that the Commission had misconstrued WATCH's petition, it could easily have pointed out that error in a petition for rehearing.
 
 
 24
 It remains to consider whether this case falls within one of the exceptions to the exhaustion doctrine. While § 405, on its face, contains no exceptions, we have construed it to:
 
 
 25
 leave[ ] room for the operation of sound judicial discretion to determine whether and to what extent judicial review of questions not raised before the agency should be denied.
 
 
 26
 Action for Children's Television v. FCC, 564 F.2d 458, 469 (D.C.Cir.1977) (quoting Great Falls Community TV Cable Co. v. FCC, 416 F.2d 238, 239 (9th Cir.1969)).[4]
 
 
 27
 The cases assume that § 405 contains implied exceptions without explaining why. We understand these cases, however, as implicitly interpreting § 405 to codify the judicially-created doctrine of exhaustion of administrative remedies, which permits courts some discretion to waive exhaustion. There is no useful legislative history to confirm or refute this interpretation,[5] but it [229 U.S.App.D.C. 368] has the merit of requiring the same degree of exhaustion for the FCC as for other agencies.[6] We adopt that interpretation here and thus construe § 405 to incorporate the traditionally recognized exceptions to the exhaustion doctrine.
 
 
 28
 In particular, where issues by their nature could not have been raised before the agency (e.g., a material change in circumstances or a serious impropriety in the administrative process), a remand to the agency may be appropriate.[7] A reviewing court may also set aside agency action that is "patently in excess of [the agency's] authority,"[8] and may in some cases consider arguments that it would have been futile to raise before the agency.[9] Moreover, it is not always necessary for a party to raise an issue, so long as the Commission in fact considered the issue.[10] Other exceptions may also exist.[11]
 
 
 29
 [229 U.S.App.D.C. 369] The usual exceptions, however, do not apply to this case. There has been no change in circumstances and no claim of defect in the administrative process or lack of authority. Moreover, we can hardly say that it would have been futile to raise to the Commission an issue--the minimum requirements of the Children's Policy Statement --on which it has not yet directly spoken.
 
 
 30
 Nor would it be appropriate to create a special exception to fit this case, even supposing our limited discretion stretches that far. WATCH itself created the problem by narrowly restricting its petition to deny, and then failed to complain in a petition for rehearing that the Commission had misunderstood WATCH's petition. It cannot complain of unfairness because we decline to address an issue it twice failed to raise, with no excuse for the failure.
 
 
 31
 To be sure, the Commission retains an "affirmative" duty to find that the public interest will be served by granting the license. West Coast Media, Inc. v. FCC, 695 F.2d 617, 622 (D.C.Cir.1982); RKO General, Inc. v. FCC, 670 F.2d 215, 232 (D.C.Cir.1981), cert. denied, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982); see 47 U.S.C. § 309(a) (the Commission "shall determine" whether the public interest, convenience, and necessity will be served by granting a license renewal). The Commission failed here to find explicitly that the three stations had satisfied the mandate of the Children's Policy Statement. Moreover, a number of factors suggest that the FCC may not be vigorously enforcing the Policy Statement: the stations' meager records in the area of children's programming; the FCC Chairman's public statement that the Policy Statement does not suit his deregulatory tastes;[12] the recent decline in children's programming;[13] and the existence of a soon to be completed FCC rulemaking on whether to revise or abandon the Policy Statement.[14]
 
 
 32
 Our suspicions aside, however, the Commission has no general duty to explain its implicit finding that the stations presented adequate children's programming, either for the edification of petitioners or to permit judicial review.[15] If, as here, the Commission grants the renewal application, it "shall ... issue a concise statement of the reasons for denying the petition [to deny], which statement shall dispose of all substantial issues raised by the petition." 47 U.S.C. § 309(d)(2) (emphasis added). Congress has not required the Commission to [229 U.S.App.D.C. 370] explain its reasoning with regard to issues not raised by a petition to deny.[16]
 
 III. ANALYSIS
 
 33
 We turn, then, to the only issue properly before us: whether a station that offers no regularly scheduled weekday children's programming cannot satisfy the dictates of the Children's Policy Statement under any circumstances. We find no such requirement in the Policy Statement.
 
 
 34
 As WATCH concedes, nothing in the Policy Statement explicitly requires regularly scheduled children's programming. We also do not find such a requirement to be implicit in the Policy Statement. Certainly regularly scheduled programming is an important component of programming. But in the Children's Policy Statement, the FCC declined to set hard and fast rules in favor of giving the broadcasting industry "flexibility" in meeting its obligation to children. 50 F.C.C.2d at 18; See Action for Children's Television v. FCC, 564 F.2d 458, 479, 481 (D.C.Cir.1977) (upholding the Commission's decision "not to adopt specific regulations governing ... programming practices for children's television" and to instead rely on industry "self-regulatory efforts"). The few flat statements to be found in the Policy Statement merely prohibit TV stations from making grossly inadequate efforts--e.g., presenting "no programs at all for children," 50 F.C.C.2d at 6, or relegating "all" children's programming to the weekends, id. at 8.
 
 
 35
 Nor would WATCH's position make sense from a policy standpoint. Its argument implies that a station that broadcasts a regularly scheduled half-hour of cartoons once a week (and sufficient other children's programming) could comply with the Children's Policy Statement, but that the station would violate the Policy Statement if it replaced the cartoons with, say, three hours per week of educational specials. We fail to see the logic of such a requirement.
 
 
 36
 Finally, this court gives "great deference" to an agency's interpretation of its own regulations. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); see Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) (deference to FCC's statutory interpretation); Federal Election Commission v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981) (agency's statutory construction must be upheld if it is "sufficiently reasonable," even if it is not "the only reasonable one or even the reading the court would have reached" on its own). Here, deference is enhanced because the Commission has consistently interpreted the Policy Statement, albeit implicitly, not to require regularly scheduled weekday children's programming. See License Renewal Applications of Certain California Television Stations, 68 F.C.C.2d 1074, 1075 (1978) (approving license renewals over objection that "the licensees do not provide age-specific programs for both school age and pre-school children on a regular weekday basis"); cf. Notice of Proposed Rulemaking, 75 F.C.C.2d 138, 143 (1979) (discussing scheduling of children's shows without distinguishing between regularly scheduled and non-regularly scheduled programs); Channel 20, Inc., 70 F.C.C.2d 1770, 1773 (noting with approval that the licensee has "aired its children's programming throughout the broadcast week" without distinguishing [229 U.S.App.D.C. 371] between regularly scheduled and non-regularly scheduled programs), reconsid. denied, 73 F.C.C.2d 648 (1979).
 
 
 37
 In sum, we cannot say that the Commission acted unreasonably in interpreting its own policy statement as not imposing a flat requirement that stations must offer regularly scheduled weekday children's programming. The Commission's decision to grant the three challenged license renewals is affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d)
 
 
 [1]
 We review here only the portions of the Children's Policy Statement essential to this case; for a fuller account, see our decision upholding the policy statement. Action for Children's Television v. FCC, 564 F.2d 458, 461-68 (D.C.Cir.1977)
 
 
 [2]
 CBS did broadcast "Captain Kangaroo," a regularly scheduled weekday program designed for preschool children. WATCH claimed, however, that CBS had failed to provide regularly scheduled weekday programming for school-age children. WATCH Petition to Deny (CBS), at 6, Joint Appendix (J.A.), at 21, 26. Apart from this single difference, WATCH's petitions to deny NBC's and ABC's license renewals were identical to its petition to deny CBS's renewal
 
 
 [3]
 See also American Radio Relay League, Inc. v. FCC, 617 F.2d 875, 879 n. 8 (D.C.Cir.1980); Bilingual Bicultural Coalition on Mass Media, Inc. v. FCC, 595 F.2d 621, 632-33 (D.C.Cir.1978) (en banc); Columbus Broadcasting Coalition v. FCC, 505 F.2d 320, 326-27 (D.C.Cir.1974); Neckritz v. FCC, 502 F.2d 411, 417 (D.C.Cir.1974); Green v. FCC, 447 F.2d 323, 329 (D.C.Cir.1971); Hansen v. FCC, 413 F.2d 374, 376 (D.C.Cir.1969); Gross v. FCC, 480 F.2d 1288, 1290 n. 5 (2d Cir.1973); Neckritz v. FCC, 446 F.2d 501, 503 (9th Cir.1971) (per curiam); Conley Elec. Corp. v. FCC, 394 F.2d 620, 624 (10th Cir.), cert. denied, 393 U.S. 858, 89 S.Ct. 127, 21 L.Ed.2d 127 (1968); Presque Isle TV Co. v. United States, 387 F.2d 502, 504-06 (1st Cir.1967)
 
 
 [4]
 See also Way of Life Television Network, Inc. v. FCC, 593 F.2d 1356, 1359 (D.C.Cir.1979); Joseph v. FCC, 404 F.2d 207, 210 (D.C.Cir.1968)
 
 
 [5]
 The relevant portion of § 405 was added to the Communications Act as a small part of a major overhaul of the Act. Pub.L. No. 554, § 15, 66 Stat. 711, 720 (1952). The Senate committee report does not discuss the provision, see S.Rep. No. 44, 82d Cong., 1st Sess. 13 (1951), and the House report merely parrots the statute, see H.R.Rep. No. 1750, 82d Cong., 2d Sess. 18 (1952), reprinted in 1952 U.S.Code Cong. & Ad.News 2234, 2252. The main thrust of the provision may have been to ensure that in the mine run of cases, where issues had been raised before the agency, a party could obtain judicial review without first petitioning the Commission for rehearing. Early case law had suggested that a petition for rehearing was sometimes a prerequisite to judicial review. See Southland Indus. v. FCC, 99 F.2d 117, 121 (D.C.Cir.1938); 4 K. Davis, Administrative Law Treatise § 26:12 (2d ed. 1983)
 
 
 [6]
 Numerous statutes contain an explicit exhaustion requirement. Only some of these statutes explicitly permit exceptions, and the statutes that permit exceptions use different wording to describe the scope of the exceptions, with no apparent rhyme or reason for the differences. Compare Securities Act of 1933, 15 U.S.C. § 77i(a) ("No objection ... shall be considered by the court unless such objection shall have been urged before the Commission.") with Securities Exchange Act of 1934, 15 U.S.C. § 78y(c)(1) ("No objection ... may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so."); and compare National Labor Relations Act, 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board ... shall be considered by the court, unless the failure ... shall be excused because of extraordinary circumstances.") (emphasis added) with Fair Labor Standards Act, 29 U.S.C. § 210(a) ("No objection ... shall be considered by the court unless such objection shall have been urged before [an] industry committee or unless there were reasonable grounds for failure so to do.") (emphasis added). See also Public Utility Holding Company Act, 15 U.S.C. § 79x(a) (similar to Securities Exchange Act)
 The very senselessness of these differences in language suggests that Congress meant, in all these statutes, merely to codify the judicial doctrine of exhaustion of administrative remedies. That would explain Congress' failure to give careful attention to the nuances of language that might, in another context, connote differences in intended meaning.
 
 
 [7]
 See Greater Boston Television Corp. v. FCC, 463 F.2d 268, 283-84 (D.C.Cir.1971) (reviewing cases), cert. denied, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972)
 
 
 [8]
 Detroit Edison Co. v. NLRB, 440 U.S. 301, 312 n. 10, 99 S.Ct. 1123, 1129 n. 10, 59 L.Ed.2d 333 (1979) (dictum); see United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) (dictum); cf. Presque Isle TV Co. v. United States, 387 F.2d 502, 505 (1st Cir.1967) (close question of statutory authority must be raised before the agency). See generally 4 K. Davis, supra note 5, §§ 26:4-26:5 (noting confusion in case law on when a jurisdictional issue must be presented to an agency)
 
 
 [9]
 See Action for Children's Television v. FCC, 564 F.2d 458, 469 (D.C.Cir.1977) (agency's "general views" are already known); Great Falls Community TV Cable Co. v. FCC, 416 F.2d 238, 239-40 (9th Cir.1969) (issue recently addressed in rulemaking); New York State Broadcasters Ass'n v. United States, 414 F.2d 990, 994 (2d Cir.1969) (constitutional challenge to federal criminal statute), cert. denied, 396 U.S. 1061, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). See generally 4 K. Davis supra note 5, §§ 26:6, :9, : 11 (discussing various reasons why exhaustion might be futile)
 Futility should not lightly be presumed, however. See United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952):
 It is urged in this case that the Commission had a pre-determined policy which would have required it to overrule the objection if made. While this may well be true ..., [r]epetition of the objection in [a large number of like cases] might lead to a change in policy ....
 See also Action for Children's Television v. FCC, 564 F.2d 458, 469 (D.C.Cir.1977) (requiring "concrete indication that reconsideration would have been futile").
 
 
 [10]
 See Office of Communication of the United Church of Christ v. FCC, 465 F.2d 519, 523-24 (D.C.Cir.1972) (issue raised by dissenting Commissioners); Buckeye Cablevision, Inc. v. United States, 438 F.2d 948, 951 (6th Cir.1971) (issue raised by another party); New York State Broadcasters Ass'n v. United States, 414 F.2d 990, 994 (2d Cir.1969) (same), cert. denied, 396 U.S. 1061, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). See also L. Jaffe, Judicial Control of Administrative Action 457-58 (1965) (objection by another party is a factor for courts to consider in deciding whether to waive exhaustion)
 This exception can be seen as a variant of the futility exception, since it would almost surely be futile for a party to raise an objection already made by someone else.
 
 
 [11]
 See Way of Life Television Network, Inc. v. FCC, 593 F.2d 1356, 1359-60 (D.C.Cir.1979) (FCC failed to follow its own regulation requiring publication of cut-off date for filing applications and denied subsequent request to waive cut-off date). See generally Hormel v. Helvering, 312 U.S. 552, 558, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941) (the cases, "while recognizing the ... general practice under which appellate courts confine themselves to the issues raised below, nevertheless do not lose sight of the fact that such appellate practice should not be applied where the obvious result would be a plain miscarriage of justice")
 
 
 [12]
 See Address by Mark Fowler, Chairman, FCC, on Children's Television and the FCC (Arizona St. Univ. Feb. 11, 1983). The speech is in the public domain and is therefore a proper subject of judicial notice. See 3 K. Davis, supra note 5, §§ 15:1-15:4 (1980) (discussing judicial notice of nonadjudicative facts)
 
 
 [13]
 See, e.g., Mann, Kangaroocide, Wash.Post, Mar. 18, 1983, at B1, col. 1; Mayer, Networks are Accused of Neglecting Children in Era of Deregulation, Wall St. J., Mar. 17, 1983, at 1, col. 1
 
 
 [14]
 See Notice of Proposed Rulemaking, 75 F.C.C.2d 138 (1979). FCC counsel stated at oral argument that this rulemaking would be completed by August 1983. Transcript of Oral Argument, Mar. 11, 1983, at 19, 39
 
 
 [15]
 Such a finding is necessarily implicit in the FCC's decision to renew the licenses. The FCC concedes that if the stations had violated the Policy Statement, that "would indeed be a serious matter," FCC Brief at 16, and would require the Commission to hold a hearing to determine what sanction, if any, to impose, id. at 21 n. 10
 
 
 [16]
 We have on occasion noted that a regulatory agency, "given a choice of constructions of an application ..., should not prefer a construction which tends to preclude broad inquiry into public interest requirements." Midwestern Gas Transmission Co. v. FPC, 258 F.2d 660, 668 (D.C.Cir.1958); see Retail Store Employees Union, Local 880 v. FCC, 436 F.2d 248, 254 (D.C.Cir.1970) (dictum). In this case, the broader question of the overall adequacy of the networks' children's programming was closely related to the narrower question raised by WATCH of regularly scheduled programming. Thus, it would have been appropriate for the Commission to address the broader issue on the merits. But we cannot say that the Commission acted arbitrarily in not reaching an issue that WATCH explicitly disavowed raising. Accord Columbia Gas Transmission Corp. v. FPC, 530 F.2d 1056, 1060 (D.C.Cir.1976) ("we do not on this record fault the Commission for taking and deciding the case as the parties laid it before them")