# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 20, 2010        Decided March 15, 2011

No. 09-1161

EDWIN KESSLER AND JAMES RIFFIN,
PETITIONERS

v.

SURFACE TRANSPORTATION BOARD AND UNITED STATES OF
AMERICA,
RESPONDENTS

———

On Petition for Review of an Order
of the Surface Transportation Board

———

*James Riffin*, appearing pro se, argued the cause and filed the briefs for petitioners. *Edwin Kessler*, appearing pro se, entered an appearance.

*Erik G. Light*, Attorney, Surface Transportation Board, argued the cause for respondent. With him on the brief were *Robert B. Nicholson* and *John P. Fonte*, Attorneys, U.S. Department of Justice, *Ellen D. Hanson*, General Counsel, Surface Transportation Board, and *Craig M. Keats*, Deputy General Counsel.

Before: GINSBURG, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Edwin Kessler and James Riffin petition for review of an order of the Surface Transportation Board granting BNSF Railway Company an exemption from the procedures in 49 U.S.C. §§ 10903–10904 for abandoning a rail line.  The petitioners also ask us to hold an order exempting a rail carrier from § 10904 may be appealed to the Board instead of being reviewed directly in this court.  We deny the petition without addressing the latter issue.

## I. Background

BNSF is a rail carrier regulated under the Interstate Commerce Act.[*]  As such, it may not abandon any rail line without the prior approval of the STB.  49 U.S.C. § 10903(a)(1).

### A.  Procedures for Abandoning a Rail Line

Before the STB will approve an application for abandonment filed pursuant to 49 U.S.C. § 10903, the Board must find "the present or future public convenience and necessity require or permit the abandonment." *Id.* § 10903(d). Ordinarily, a carrier must perform a number of statutorily mandated steps before the Board will make such a finding. *See id.* § 10903.  Additionally, pursuant to 49 U.S.C. § 10904, when a rail carrier files an application for abandonment, any financially responsible party may buy the track that would

---

[*] 24 Stat. 379 (codified as amended by the Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, in scattered sections of 49 U.S.C.).

otherwise be abandoned. *Id.* § 10904(c). The trigger for such a forced sale is euphemistically called an "offer of financial assistance" (OFA). *See id.* § 10904.

Notwithstanding the administrative burden §§ 10903 and 10904 ordinarily place upon a carrier, the STB has broad discretion to exempt the carrier from any statutory procedure that governs abandonment of a rail line insofar as that procedure is "not necessary to carry out [] transportation policy" and either the exemption is "of limited scope" or the abandonment procedure is "not needed to protect shippers from the abuse of market power." 49 U.S.C. § 10502(a). The Board may exercise that discretion either upon its own initiative or upon the application of an interested party. *Id.* § 10502(b).

In order to streamline the exercise of its discretion, the STB has established two types of exemptions from the procedures set out in § 10903. The STB grants an "individual exemption" from § 10903 only after having made a specific inquiry relevant to the criteria in § 10502(a). *See* 49 C.F.R. §§ 1152.50, 1152.60. The STB grants a "class exemption" for abandonment of any rail line that is truly "out-of-service." *See id.* § 1152.50. To get a class exemption, the carrier must certify, among other things, no local traffic has moved over the line to be abandoned for at least two years and any overhead traffic on the line can be rerouted. *Id.* § 1152.50(b). Under some circumstances the STB also exercises its discretion (as confined by § 10502) to exempt a rail carrier from the forced sale procedures of § 10904. *See, e.g.*, *Cent. Kansas Ry.*, *in Sedgwick Cnty.*, STB Dkt. No. AB-406-14X, at 1, 8, 10 (served Apr. 10, 2001) (exempting carrier from §§ 10903–10905 because no shipper would be harmed, the right-of-way was needed for a public purpose, "allowing for an OFA process could ... hinder the timely completion of the

planned [public] projects," and the criteria of § 10502 were otherwise met).

B. BNSF's Abandonment of the Chickasha Line

In 2005 BNSF filed a "notice of class exemption" for a three-mile segment of the Chickasha Railway Line in Oklahoma City so the Oklahoma Department of Transportation (ODOT) could use portions of the right-of-way for the relocation of a nearby highway. The Board published the notice of exemption in the Federal Register and, over the objection of local civic groups opposed to the highway project, permitted the exemption to become effective.

Kessler subsequently petitioned the Board to reopen the exemption proceeding and to revoke BNSF's class exemption on the ground that the Chickasha Line in fact served local traffic.[*] Although BNSF had not sought an individual exemption as an alternative means of abandonment, Kessler asked the STB to grant BNSF such an exemption from § 10903 so he might file what would otherwise be an untimely OFA.

In 2008 the Board granted Kessler's petition to reopen. Finding the eastern portion of the Chickasha Line had indeed served local traffic during the two years prior to BNSF's application to abandon it, the Board held BNSF's notice of class exemption was "void ab initio." *See* 49 C.F.R. 1152.50(d)(3). The Board declined Kessler's suggestion it grant BNSF an individual exemption because the record did

---

[*] Although Kessler and Riffin filed the instant petition for review jointly, both parties describe the proceedings before the agency as if Kessler alone participated. For simplicity, we do the same.

not sufficiently detail the effect abandonment would have upon local shippers.

BNSF thereafter petitioned the Board for a declaratory order characterizing BNSF's proposed action with respect to the eastern and middle portions of the Chickasha Line as track "relocations" rather than abandonments. Unlike an abandonment, a relocation does not require the Board's prior approval. *See* 49 U.S.C. § 10901(a). It follows that if BNSF were to receive a favorable declaratory ruling, then the ODOT's project could move forward without approval from the STB and despite any opposition to BNSF's proposed changes. With respect to the eastern segment, BNSF said it planned to relocate the track in such a way that the two shippers on that segment would still have access to rail service. Instead of moving the track in the middle segment, however, BNSF planned to rebuild an existing line running just south of and parallel to the Chickasha Line.

BNSF still planned to abandon the dilapidated western segment in accordance with the provisions of § 10903. According to BNSF, the lone shipper on that segment was Boardman, Inc., and it had not requested service since 2003. BNSF nevertheless represented that if Boardman made a reasonable request for service before abandonment proceedings were consummated, then BNSF would repair the western segment and provide service to Boardman.

The Board solicited public comments on BNSF's proposal. 73 Fed. Reg. 58,711 (2008). It asked specifically for comments addressing (i) whether BNSF's plan was more properly termed a track relocation or a de facto abandonment and (ii) what effect BNSF's plan would have upon shippers generally and upon Boardman in particular. *Id.* at 58,712.

Kessler, who owns property abutting the western segment, urged the Board to find BNSF's plan unacceptable because of the harm it would do to Boardman and might do to Kessler himself as a "prospective" shipper. He argued the proposed "relocation" of the middle segment, together with the abandonment of the western segment, would effectively deprive him and Boardman of access to rail service. More specifically, Kessler claimed BNSF's refusal to deliver a locomotive he had wanted transported to his property demonstrated BNSF would not repair the western track even if he or Boardman were to make a reasonable request for service.

For its part, Boardman said it would not be affected by BNSF's proposed relocations, provided BNSF ensured it would pick up and deliver freight to Boardman's siding, whether directly via a repaired western segment or by truck (so called "trans-load" service). No other shipper submitted a comment.

In 2009 the Board held BNSF's proposed change in the eastern segment was properly deemed a track relocation rather than an abandonment. With respect to the middle segment, however, which BNSF planned not to move but rather to replace by upgrading a nearby parallel line, the STB declined to rule on that issue because no previous decision of the Board addressed whether such action could be deemed a "relocation." Instead, the Board concluded that in the time since BNSF's proceeding for a class exemption the agency had compiled sufficient evidence to determine no shipper would be adversely affected by abandonment of the middle segment. The Board then authorized BNSF to abandon the middle segment and sua sponte exempted BNSF from §§ 10903 and 10904.

## II. Analysis

Kessler petitions for review of the Board's decision solely as it pertains to exemption of the middle segment from the procedures set out in § 10904. We review the final order of the Board deferentially, asking only whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Riffin v. Surface Transp. Bd.*, 592 F.3d 195, 197 (D.C. Cir. 2010).

A. Arbitrary, Capricious, or an Abuse of Discretion?

Kessler first argues the Board's decision to exempt BNSF from § 10904 is indeed arbitrary, capricious, and an abuse of discretion. Recall the agency acted pursuant to § 10502, which grants it discretion to exempt a rail carrier from the procedures for abandonment. As Kessler recognizes, the STB properly exercises that discretion when the right-of-way to be abandoned is needed for a public purpose and there is no overriding public need for continued rail service. *See, e.g.*, *Cent. Kansas Ry.*, STB No. AB-406-14X, at 10.

Here, BNSF sought to abandon the middle segment so the ODOT could use the right of way to improve a public highway. Kessler, however, maintains the need for rail service over the middle segment is great, wherefore the Board should have denied abandonment and left the ODOT to revise its plan to relocate the highway.

We hold it was not arbitrary, capricious, or an abuse of discretion for the STB to exempt the middle segment from § 10904. There is no shipper on the middle segment; therefore the abandonment of that segment could adversely affect only shippers located on the eastern and western segments. The shippers on the eastern segment will continue to have rail

access pursuant to BNSF's proposal. As for shippers on the western segment, the Board reasonably relied upon BNSF's representation it would restore service to Boardman, the only established shipper on that segment,[*] at Boardman's request. The Board also reasonably relied upon the ODOT's representations that any delays in the highway project could cost it millions of dollars and jeopardize the safety of motorists. In view of these likely costs and the limited demand for rail service, the Board acted reasonably to enable the ODOT to relocate the highway along its planned route.[**]

B. Otherwise Not in Accordance with Law?

Kessler also maintains the Board's sua sponte decision to exempt the middle segment from the procedures for abandonment was inconsistent with the agency's own regulations. Alternatively, he argues it violated his right to due process.

---

[*] In light of Kessler's acknowledgement that he requested delivery of the locomotive solely in order to "test" BNSF's resolve to restore service to the western segment, and of his failure to argue before the Board that either he or Riffin was a shipper, as opposed to a "prospective" shipper, the STB reasonably discounted any claim Kessler (or Riffin) may have made regarding their need for rail service. Indeed, the request for delivery of the locomotive was the only evidence in the record even suggesting Kessler had any intention whatsoever of becoming a shipper.

[**] Kessler also asserts the Board's decision contravenes "other aspects of the rail transportation policy" and conflicts with prior decisions of the Board. We do not, however, indulge mere assertions, even when they are garnished with block quotations, as though they were actual arguments. *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008); *see N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way").

### 1. Board Regulations

Kessler contends the Board contravened its regulations when it reopened BNSF's notice of class exemption despite earlier having declared it "void ab initio." He reasons that because void means "[n]ull; ineffectual; nugatory" it is "legally impossible to reopen a proceeding that has been declared to be void *ab initio*."

A Board regulation provides that if a rail carrier's notice of class exemption "contains false or misleading information, the use of the exemption is void *ab initio* and the Board shall summarily reject [it]." 49 C.F.R. § 1152.50(d)(3). The STB argues this regulation prohibits only the rail carrier, not the Board, from making "use of the exemption." As the agency interprets the rule, there is nothing to prevent the Board from relying upon any part of the record before it that is not false or misleading or from later, upon a proper showing, granting the rail carrier an individual exemption.

We defer to the Board's reasonable interpretation of its own regulation. *Buffalo Crushed Stone, Inc. v. Surface Transp. Bd.*, 194 F.3d 125, 128–29 (D.C. Cir. 1999). That standard is met here, for the Board's reading is consistent with the plain text of § 1152.50(d)(3). Indeed, Kessler himself implicitly proceeded from the same understanding when he urged the Board simultaneously to void BNSF's application for a class exemption and to grant it an individual exemption. Moreover, the STB did not rely upon any potentially misleading evidence in BNSF's notice of class exemption; the Board's finding no shipper would be adversely affected by abandonment of the middle segment was made only after it had received and considered additional information put into the record of BNSF's later petition for a

declaratory order. We conclude the STB did not act contrary to law.

### 2. Due Process

Kessler argues his right to due process was violated because the Board failed to give him notice and an opportunity for comment before "granting BNSF an exemption from the OFA procedures." This argument is at odds with the record.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted); *accord City of Wausau v. United States*, 703 F.2d 1042, 1044 (7th Cir. 1983) (STB comports with due process if interested parties are "given full notice and opportunity to be heard" prior to issuance of an abandonment exemption). Here, the STB published notice of, and sought comments regarding, BNSF's proposal to relocate the middle segment specifically in order "to make way for [a] major highway project." 73 Fed. Reg. 58,711, 58,711 (2008). This put the public clearly on notice that if BNSF's petition was granted, then there would be no opportunity for any party to purchase the middle segment; BNSF could not "make way" for the highway without conveying its right-of-way to the ODOT.

The Board also provided an opportunity for the public to comment upon BNSF's plan — which opportunity Kessler took, as we have seen, to argue BNSF's proposal amounted to abandonment and that such abandonment was not in the interest of local shippers. Kessler even submitted an alternative proposal that purported to accommodate both the highway project and continued rail service over the middle

segment. Boardman too offered an opinion on BNSF's proposal, as did other members of the public.

In its Final Decision the agency fully considered the comments submitted. Further process would not have afforded Kessler, the public, or the Board greater clarity regarding any relevant matter.[*]

C. Request for Clarification

Finally, Kessler asks the court to resolve a purported "conflict" about the proper procedure for seeking review of an exemption from § 10904. The Board maintains review of an exemption from § 10904 is governed by the specialized procedures in 49 C.F.R. § 1152.25. Under § 1152.25, which by its terms governs the appellate procedure specifically in "abandonment or discontinuance proceedings," an appeal to the Board "will not be entertained." *Id.* § 1152.25(e)(2). Rather, a party "seeking further administrative action may file a petition to reopen the proceeding," which will be granted "only upon a showing that the action would be affected materially because of new evidence, changed circumstances, or material error." *Id.* Alternatively, the party aggrieved by the abandonment or discontinuance proceeding may forgo further administrative action and instead petition this court for review. *Id.* § 1152.25(e)(5).

---

[*] In conjunction with his due process argument, Kessler laments his lack of opportunity to engage in "fact-finding." As the Board points out, however, Kessler could have sought discovery of any evidence "relevant to the subject matter involved in a proceeding." 49 C.F.R. § 1114.21(a)(1). His failure to do so is no reason now to hold he was denied due process.

Kessler, by contrast, suggests a decision to grant an exemption from § 10904 is to be reviewed pursuant to the general appellate procedures in 49 C.F.R. § 1115.2, which provide an "appeal of right" to the Board from any "initial decision of an administrative law judge, individual Board Member, or employee board." *Id.* § 1115.2(a). The key to Kessler's preference is that a timely appeal of an initial decision "will stay the effect of the action pending [the Board's] determination." *Id.* § 1115.2(f).

In a filing he made with the Board and captioned a "petition for reconsideration," Kessler's brother John — but not Kessler — argued the exemption of the middle segment was an "initial decision" subject to the general appellate procedures set out in § 1115.2, wherefore his petition should be treated as an appeal of right that automatically stays the exemption. The Board held the general appellate procedures did not apply to an exemption from § 10904 and therefore deemed the pleading a "petition to reopen" filed pursuant to § 1152.25, which petition the Board later denied. *See BNSF Ry.—Petition for Declaratory Order*, STB Dkt. No. AB-6-430X, at 1 (served May 7, 2010), *embraced in* STB Dkt No. FD-35164.

John's petition was thus disposed of in two separate orders — one holding § 1152.25 governs the appeal of a Board order exempting a carrier from the procedures in § 10904 and the other denying John's putative petition to reopen. The latter order is not reviewable. *See Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 278 (1987) (where agency "*refuses* to reopen a proceeding, what is reviewable is merely the lawfulness of the refusal"); *Sinclair Broad. Grp., Inc. v. FCC*, 284 F.3d 148, 156 (D.C. Cir. 2002) ("Absent new evidence or changed circumstances presented to the agency upon reconsideration,

the court lacks jurisdiction to hear a challenge to an agency's order denying reconsideration of its earlier administrative ruling"). John did not seek judicial review of the former order.

Kessler was not a party to his brother's proceeding. Kessler may not raise the issue for the first time on appeal because, unlike his brother, Kessler did not exhaust his administrative remedies. Although a petitioner for review ordinarily may raise any issue raised by any party to the administrative proceeding, *see, e.g.*, *Cellnet Commc'n Inc. v. FCC*, 965 F.2d 1106, 1109 (D.C. Cir. 1992), that rule is inapplicable where, as here, no party to the disputed order has petitioned the court to review it and the party who does petition the court for review does not argue any exception to the exhaustion doctrine applies. *Cf. Wash. Ass'n for Television & Children v. FCC*, 712 F.2d 677, 682 & nn.7–11 (D.C. Cir. 1971) (listing examples of exceptions to the exhaustion doctrine). We dismiss this portion of Kessler's petition.

## III. Conclusion

For the foregoing reasons, the petition for review is denied insofar as Kessler seeks review of the Board's order exempting BNSF from the procedures set out in § 10904 and dismissed insofar as he seeks review of the Board's determination 49 C.F.R. § 1152.25 governs appellate review of such exemption.

*SO ORDERED.*